U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - LAKE CHARLES

AUG 25 2008

ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| CAMERON PARISH SCHOOL BOARD | : | DOCKET NO. 06-1970 |
| VS. | : | JUDGE MINALDI |
| RSUI INDEMNITY COMPANY | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Presently before the Court are cross-motions for partial summary judgment. Specifically, Defendant RSUI Indemnity Company (hereinafter "RSUI") filed, pursuant to Fed. R. Civ. P. 56, a Motion for Partial Summary Judgment to Dismiss Plaintiff's Claims for Flood Damage Pursuant to the Flood Exclusion and Anti-Concurrent Causation Clause [doc. 24]. Plaintiff Cameron Parish School Board (hereinafter "CPSB") has filed a Cross-Motion for Partial Summary Judgment as to the Inapplicability of the Anti-Concurrent Causation Clause [doc 34].

CPSB argues that the anti-concurrent causation (hereinafter "ACC") clause provision is ambiguous. In support, CPSB relies on this Court's prior ruling in the case *In re Cameron Parish Rita Litigation Against State Farm*, 2007 WL 2066813 (W.D. La. 07/13/07). RSUI contends that since *Cameron Parish*, the Fifth Circuit has released two opinions that undermine its validity. RSUI cites *Leonard v. Nationwide Mut. Ins. Co.*, 499 F.3d 419 (5th Cir. 2007), *certiorari denied* __ U.S. __, 128 S.Ct. 1873, 170 L.Ed. 2d 745 (Apr. 14, 2008) and *Tuepker v. State Farm Fire & Cas. Co.*, 507 F.3d 346 (5th Cir. 2007) in support. Alternatively, CPSB argues that even if this Court determines that the ACC clause is unambiguous in light of these recent Fifth Circuit opinions,

summary judgment in CPSB's favor is still appropriate because the clause is against Louisiana public policy.

## FACTS

Plaintiff CPSB is a political subdivision of the State of Louisiana to whom Defendant RSUI sold an "all-risk policy," covering loss caused by any peril not specifically excluded.[1] The policy was a scheduled commercial property insurance policy, number NHD337402, in effect from October 1, 2004 through October 1, 2005.[2] The policy also contained a Cause of Loss provision, which provided:

> B. Exclusions
> 1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
>     g. Water
>     (1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;
>     (2) Mudslide or mudflow;
>     (3) Water that backs up or overflows from a sewer, drain or sump; or
>     (4) Water under the ground surface pressing on, or flowing or seeping through:
>         (a) Foundations, walls, floors or paved surfaces
>         (b) Basements, whether paved or not; or
>         (c) Doors, windows or other openings.[3]

Unfortunately, each of the covered properties sustained severe damage when Hurricane Rita

---

[1] Def.'s Statement of Uncontested Facts [doc. 24-6] ¶¶ 1, 3.

[2] *Id.* ¶ 4.

[3] Def.'s Ex. 1 (Policy).

2

made landfall in Cameron Parish on September 24, 2005.[4] Three locations, Hackberry High School, Grand Lake High School, and Johnson Bayou High School, were repairable; the remaining properties were destroyed.[5]

CPSB filed suit on September 25, 2006. Specifically at issue is the ACC clause in the Cause of Loss Provision, "Exclusions," portion of the policy. As quoted above, that provision states:

> We will not pay for loss or damage caused directly or indirectly by any of the following. **Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.** (emphasis added).

## SUMMARY JUDGMENT STANDARD

According to Fed. R. of Civ. P. 56, summary judgment should be granted when the movant demonstrates that no issue of material fact exists and that the movant is entitled to judgment as a matter of law. It is the movant's initial burden to inform the court of the basis for its motion and to identify those portions of the pleadings, depositions, and answers to interrogatories, admissions on file and affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). Once a proper motion has been made, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2553-54).

Both parties agree that there is no issue of genuine fact for purposes of these cross-motions.

---

[4] Def.'s Statement of Uncontested Facts [doc. 24-6] ¶¶ 7-8.

[5] *Id.* ¶¶ 9-10.

3

Because "the record discloses no material facts, or material inferences that may permissibly be drawn from those facts, over which reasonable [persons] could differ" concerning these motions, this issue is ripe for summary judgment. *Central Oil & Supply Corp. v. United States*, 557 F.2d 511 (5th Cir. 1977).

## LAW

In the wake of Hurricanes Katrina and Rita, insurance law has rapidly evolved. On July 13, 2007, this Court issued *In re Cameron Parish*, which considered a Motion for Partial Summary Judgment as to the validity of an ACC clause[6] contained in policies issued by the defendant insurer State Farm. 2007 WL 2066813. At issue was a policy covering damage caused by wind, but also containing an ACC clause that denied coverage for wind damage occurring concurrently or in any sequence with water. *Id.* This Court found that the ACC clause was ambiguous because it covered wind damage but excluded coverage for wind when it "acts concurrently or in any sequence with water." *Id.* at 5.[7]

On August 30, 2007, shortly after this Court's *In re Cameron Parish* decision, the Fifth Circuit ruled in *Leonard*, an insurance case decided substantively on Mississippi law. Partially at issue before the Fifth Circuit was a Southern District of Mississippi holding that an ACC clause was unenforceable because it was ambiguous. The clause stated:

---

[6] ACC clauses deny "coverage whenever an excluded peril and a covered peril combine to damage a dwelling or personal property." *Leonard*, 499 F.3d at 425.

[7] In so holding, this Court relied upon *Seals v. Morris*, 423 So.2d 652 (La. App. 1982), where the Louisiana court held: "Simply stated, coverage can not be provided by the right hand and then be excluded by the left hand. A policy can not in one instance declare there is express coverage and in a second provision declare effectually there is not coverage." *Id.* Because under Louisiana law, any ambiguity in the policy is to be construed in favor of policy holder, this Court found that the ACC clause was invalid. *Id.* at 4.

4

> 1. We do not cover loss to any property resulting directly or indirectly from any of the following. **Such a loss is excluded even if another peril or event contributed concurrently or in any sequence to cause the loss.**
>
> ...
>
> > 2. Water or damage caused by water-borne material . . . .
> >    (1) flood, surface water, waves, tidal waves, overflow of a body of water, spray from these, whether or not driven by wind.

*Leonard*, 499 F.3d at 430 (emphasis added). The district court held that when the policy was read as a whole, an ambiguity arose because one provision provided explicitly for windstorm coverage and another provision denied coverage when wind damage occurred concurrently or in any sequence with water damage. *Leonard v. Nationwide Mut. Ins. Co.*, 438 F. Supp. 2d 684, 694 (S.D. Miss. 2006).

In reviewing the district court's decision, the Fifth Circuit first considered principles of Mississippi insurance law. The court noted, "Mississippi courts give effect to the plain meaning of an insurance policy's clear and unambiguous language." *Leonard*, 499 F.3d at 429 (citing *Robley v. Blue Cross/Blue Shield of Miss.*, 935 So.2d 990, 996 (Miss. 2006)). The *Leonard* court noted that Mississippi law requires that any ambiguity is to be construed in favor of the policyholder. *Id.* (citing *J&W Foods Corp. v. State Farm Mut. Auto. Ins. Co.*, 723 So.2d 550, 552 (Miss. 1998)). Under Mississippi law, "ambiguity arises when a term or provision is susceptible to more than one reasonable meaning, but can also result from 'internal conflict' between policy provisions that renders uncertain the meaning of the policy as a whole." *Id.* (citing *Miss. Farm Bureau Mut. Ins. Co. v. Walters*, 908 So.2d 765, 769 (Miss. 2005)). Finally, the court observed:

> The burden of proving that coverage exists for a peril under an insurance policy rests with the policyholder. *Lunday v. Lititz Mut. Ins. Co.*, 276 So.2d 696, 698 (Miss.1973). The insurer bears the

> burden of proving that a particular peril falls within a policy exclusion; the insurer must plead and prove the applicability of an exclusion as an affirmative defense. *Commercial Union Ins. Co. v. Byrne*, 248 So.2d 777, 782 (Miss.1971). Mississippi courts strictly construe policy exclusions against the insurer. [*State Farm Mut. Auto. Ins. Co. v. Scitzs*, 394 So.2d 1371, 1372-73 (Miss.1981).]

*Leonard*, 499 F.3d at 429.

After considering the principles of Mississippi insurance law, the Fifth Circuit overturned the district court ruling that the ACC clause was ambiguous. *Id.* at 430. According to the *Leonard* court, the clause's plain language supports its clarity and defines its meaning:

> The clause unambiguously excludes coverage for water damage "even if another peril"-e.g., wind-"contributed concurrently or in any sequence to cause the loss." The plain language of the policy leaves the district court no interpretive leeway to conclude that recovery can be obtained for wind damage that "occurred concurrently or in sequence with the excluded water damage." *Leonard*, 438 F. Supp. 2d at 693. Moreover, in the past we have not deemed similar policy language ambiguous. *See, e.g., Arjen Motor Hotel Corp. v. Gen. Accident Fire & Life Assurance Corp.*, 379 F.2d 265, 268 (5th Cir.1967) (affirming denial of recovery when evidence "conclusively establish [ed] that wave action, an excluded peril, at the very least contributed to the collapse of the restaurant building"). . . . The clause is not ambiguous.
>
> The fatal flaw in the district court's rationale is its failure to recognize the three discrete categories of damage at issue in this litigation: (1) damage caused exclusively by wind; (2) damage caused exclusively by water; and (3) damage caused by wind "concurrently or in any sequence" with water. The classic example of such a concurrent wind-water peril is the storm-surge flooding that follows on the heels of a hurricane's landfall. The only species of damage covered under the policy is damage caused exclusively by wind. But if wind and water synergistically caused the same damage, such damage is excluded.

*Id.* at 430-31.

Finding that the ACC clause is unambiguous, the Fifth Circuit stated that the plaintiffs may

6

only prevail if the ACC is prohibited by Mississippi case law, statutory law, or public policy. *Id.* at 430-31. Noting that Mississippi courts have not resolved "whether an insurance policy may preclude recovery for damages caused by the concurrent action of the wind and water of a hurricane, the Fifth Circuit proffered an educated "*Erie* guess" as to how the Mississippi Supreme Court would rule. *Id.* at 431. The court observed that Mississippi's default causation rule regarding damages that are caused concurrently by a covered and an excluded peril is the efficient proximate cause doctrine,[8] but that recent decisions have all upheld ACC clauses that abrogated the default rule and "excluded damage occasioned by the synergistic action of a covered and an excluded peril." *Id.* at 431-33. Thus, after considering Mississippi case law, statutory law, and public policy, the Fifth Circuit concluded that insurers may supplant the default efficient proximate causation rule with an ACC clause.[9] *Id.* at 436.

On November 6, 2007, on the heels of the *Leonard* decision, the Fifth Circuit again considered a policy's ACC clause under Mississippi substantive law in *Tuepker v. State Farm Fire & Casualty Co.*, 507 F.3d 346 (5th Cir. 2007). The ACC clause in *Tuepker* read:

> 2. We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c)

---

[8] This doctrine permits the homeowner to recover after showing that the covered peril was the proximate cause of the damage, even if other excluded perils contributed to such damage. *Id.* at 432.

[9] In so holding, the Fifth Circuit noted that a majority of the states that have considered this matter enforce ACC clauses. *Id.* at 434. Moreover, the *Leonard* court found that Mississippi has not adopted the efficient proximate cause doctrine as a matter of public policy, and noted that "most jurisdictions concur that ACC clauses comport with state public policy." *Id.* at 435. Lastly, the Fifth Circuit did not find any Mississippi statute that mandates insurance policies reflect the efficient proximate cause doctrine. *Id.*

7

> **whether other causes acted concurrently or in any sequence with the excluded event to produce the loss;** or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these.
>
>> c. Water Damage, meaning:
>>> (1) flood, surface water, waves, tidal water, tsunami, seiche, overflow of a body of water, or spray from any of these, all whether driven by wind or not;
>>> (2) water or sewage from outside the residence premises plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area; or
>>> (3) water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

*Tuepker*, 507 F.3d at 351 (emphasis added). The Fifth Circuit observed that the language of this ACC clause differed from that analyzed in the *Leonard* case but found that the difference did not introduce ambiguity, but instead:

> Both [clauses] clearly state that excluded losses-here, any loss which would not have occurred in the absence of one or more of the excluded events-will not be covered even if a nonexcluded event or peril acts "concurrently or in any sequence" with the excluded event to cause the loss in question. Thus, *Leonard* governs this case, and compels the conclusion that the [ACC] clause in State Farm's policy is not ambiguous, and should be enforced under Mississippi law. As the *Leonard* opinion directs, any damage caused exclusively by a nonexcluded peril or event such as wind, not concurrently or sequentially with water damage, is covered by the policy, while all damage caused by water or by wind acting concurrently or sequentially with water, is excluded. Thus, the [ACC] clause in combination with the Water Damage Exclusion clearly provides that indivisible damage caused by both excluded perils and covered perils or other causes is not covered. However, as State Farm has conceded in its briefs here and below, the [ACC] clause by its terms applies only to "any loss which would not have occurred in the absence of

8

one or more of the below listed excluded events," and thus, for example, if wind blows off the roof of the house, the loss of the roof is not excluded merely because a subsequent storm surge later completely destroys the entire remainder of the structure; such roof loss did occur in the absence of any listed excluded peril.

*Tuepker*, 507 F.3d at 354 (internal citations omitted).

Finding the ACC clause unambiguous, the *Tuepker* court also considered whether case law, public policy, or statutory law would preclude its operation. Citing *Leonard*, the court found that "ACC clauses are enforceable under Mississippi law, and that they circumvent the efficient proximate cause doctrine." *Id.* at 356.

On April 8, 2008, the Supreme Court of Louisiana held in *Sher v. Lafayette Ins. Co.*, ___ So.2d ___, 2008 WL 928486 (La. 2008) that under Louisiana law, the term "flood" lacked ambiguity. The decision dovetailed and affirmed the Fifth Circuit's "*Erie* guess" in *In Re Katrina Canal Breaches Litigation*, 495 F.3d 191 (5th Cir. 2007).[10] *Sher* articulated the guiding principles of Louisiana insurance contract interpretation.[11] The *Sher* court observed:

---

[10] In *In Re Katrina Canal Breaches Litigation*, the Fifth Circuit articulated Louisiana's principles of statutory interpretation as they pertain to insurance contracts. The Fifth Circuit also affirmed the district court's ruling that the ACC clause did not apply because there were not two separate causes of the plaintiffs' damages. 495 F.3d at 222. Thus, the *In Re Katrina Canal Breaches Litigation* court concluded that it need not reach the issue of whether insurers in Louisiana may contract around the efficient proximate cause rule, nor need it address the operation of the efficient proximate cause rule. *Id.* at 222-223. In so doing, the Fifth Circuit "expresse[d] no opinion on the extent to which Louisiana follows the efficient proximate cause rule in the context of all-risk policies. *Id.* at 222 n.28 (noting that "[t]o our knowledge, the Louisiana Supreme Court has not addressed the applicability of the efficient proximate cause doctrine in the context of an all-risk policy").

[11] In diversity cases, federal courts must apply state substantive law, and thus final decisions from the Louisiana Supreme Court guide federal courts. *In Re Katrina Canal Breaches Litigation*, 495 F.3d 191, 206 (5th Cir. 2007). Without such guidance, federal courts must proffer an "*Erie* guess." *Id.* Under Louisiana's civilian tradition, an *Erie* guess requires the court to first examine primary sources of law–the constitution, codes, and statutes–and then jurisprudence as a

An insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Civil Code. The judicial responsibility in interpreting insurance contracts is to determine the parties' common intent. Words and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning.

An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Unless a policy conflicts with statutory provisions or public policy, it may limit an insurer's liability and impose and enforce reasonable conditions upon the policy obligations the insurer contractually assumes.

If after applying the other general rules of construction an ambiguity remains, the ambiguous contractual provision is to be construed against the insurer and in favor of coverage. Under this rule of strict construction, equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer. That strict construction principle, however, is subject to exceptions. One of these exceptions is that the strict construction rule applies only if the ambiguous policy provision is susceptible to two or more reasonable interpretations. For the rule of strict construction to apply, the insurance policy must be not only susceptible to two or more interpretations, but each of the alternative interpretations must be reasonable. (Citations omitted).

*Sher*, __ So.2d __, 2008 WL 928486, 3 (La. 2008) (quoting *Huggins v. Gerry Lane Enterprises, Inc.*, 957 So.2d 127, 128-29 (La. 2007)).

The exclusion in *Sher* stated:

> 1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
> g. Water

---

secondary law source. *Id.* (noting that "although we will not disregard the decisions of Louisiana's intermediate courts unless we are convinced that the Louisiana Supreme Court would decide otherwise, we are not strictly bound by them").

10

> (1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not...

*Id.* at 4. Relying upon principles of Louisiana contract interpretation, the *Sher* court held that the term "flood" was not ambiguous. *Id.* at 10.

## ANALYSIS

Pointing to the Fifth Circuit's decisions in *Leonard* and *Tuepker*, RSUI asserts that this Court erred in finding the ACC clause ambiguous in *Cameron Parish*. CPSB responds that the Fifth Circuit's jurisprudence does not bind this Court because *Leonard* and *Tuepker* were decided substantively under Mississippi law, while *Cameron Parish* and this case are bound by Louisiana law. According to CPSB, even if this Court should now find that pursuant to *Leonard* and *Tuepker*, the ACC clause in its contract is unambiguous, Louisiana public policy prohibits ACC clauses.

At the outset, the ACC clause in this case is similar to the ACC clause in *Leonard*. The clause in *Leonard* states in pertinent part: "1. We do not cover loss to any property resulting directly or indirectly from any of the following. Such a loss is excluded even if another peril or event contributed concurrently or in any sequence to cause the loss . . . ." *Leonard*, 499 F.3d at 430. The ACC clause language contained in RSUI's policy states in pertinent part: "1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss."

Moreover, reviewing the Louisiana Supreme Court's articulation of Louisiana insurance contract interpretation law in *Sher* and comparing it to the Mississippi law stated in *Leonard*, this Court finds no relevant difference between the two states. A comparison of relevant Louisiana law to the Mississippi law controlling the Fifth Circuit's decisions in *Leonard* and *Tuepker*, and a

11

comparison of the pertinent ACC clauses, leads this Court to find that, in light of those decisions and recently developed Louisiana law, the ACC clause in this case is unambiguous.

Thus, this Court is bound by the *Leonard* and *Tuepker* conclusions and must find that ambiguity does not exist in the ACC clause here despite this Court's finding of ambiguity in the ACC clause considered in *Cameron Parish*. As such, *Leonard*'s analysis is instructive:

> The fatal flaw in the district court's rationale is its failure to recognize the three discrete categories of damage at issue in this litigation: (1) damage caused exclusively by wind; (2) damage caused exclusively by water; and (3) damage caused by wind "concurrently or in any sequence" with water. The classic example of such a concurrent wind-water peril is the storm-surge flooding that follows on the heels of a hurricane's landfall. The only species of damage covered under the policy is damage caused exclusively by wind. But if wind and water synergistically caused the same damage, such damage is excluded.

*Leonard*, 499 F.3d 419, 430-31.[12]

Finding that the ACC clause is not ambiguous, this Court must next assess whether the ACC clause is precluded from operation by Louisiana case law, statutory law, or public policy. Again, this

---

[12] This analysis is bolstered by the fact that *Tuepker*, which applies the *Leonard* analysis, relies in part on Fifth Circuit case law decided in Louisiana. The Fifth Circuit noted that its finding that the ACC clause in *Tuepker* was unambiguous was further supported by *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 221 (5th Cir. 2007). The *Tuepker* court observed that "under Louisiana law, similarly worded State Farm policies, which also included [ACC] clauses, were unambiguous and enforceable, but not addressing the impact of the [ACC] clause in the policies." *Tuepker*, 507 F.3d at 354 n.8.

Further, the recently-decided *Bilbe v. Belsom*, 530 F.3d 314, 317 n.3 (5th Cir. 2008) persuades this Court that it has reached the correct conclusion. The Fifth Circuit found that, although the ACC clause issue had not been preserved for its review in the case, should it have had to take up the issue "precedent [was] against" the plaintiff and, even considering the plaintiff's proximate cause argument, summary judgment was nonetheless appropriate. *Id.* (citing *Leonard* for the notion that the ACC clause in the plaintiff's Louisiana insurance policy served to preclude recovery for any damage not caused by wind solely, regardless of the efficient proximate cause doctrine).

Court's analysis mirrors the Fifth Circuit's analysis of the same issue in *Leonard*. Although the Louisiana Supreme Court has not specifically ruled on the issue with respect to all-risk policies, this Court observes that the default rule applicable to insurance policies appears to be the efficient proximate cause doctrine. *See In re Katrina*, 495 F.3d at 222 n.8; *Landry v. Louisiana Citizens Property Ins. Co.*, 983 So.2d 66, 83 (La. 2008). This conclusion is supported by the seminal case on wind policies in Louisiana, *Roach-Strayhan-Holland Post No. 20, Am. Legion Club, Inc. v. Continental Ins. Co. of N.Y.*, 112 So.2d 680, 683 (La. 1959). The Court in *Roach* held "it is sufficient, in order to recover upon a windstorm insurance policy not otherwise limited or defined, that the wind was the proximate or efficient cause of the loss or damage, notwithstanding other factors contributing thereto." 112 So.2d at 683.

Following *Roach*, numerous courts have relied on this quoted language in analyzing coverage under insurance policies governed by Louisiana law. *See, e.g., Lorio v. Aetna Ins. Co.*, 232 So.2d 490, 493 (La. 1970) ("[I]f a windstorm is the dominant and efficient cause of the loss, the insured may recover notwithstanding that another cause or causes contributed to the damage suffered."); *Leonards v. Travelers Ins. Co.*, 506 So.2d 509, 511 (La. App. 3d Cir. 1986) (applying *Roach* and finding "that the wind, though not the sole contributing cause, was the proximate or efficient cause of the damages suffered by the building"); *Riche v. State Farm Fire & Cas. Co.*, 356 So.2d 101, 103 (La. App. 1st Cir. 1978) (citing *Roach* as controlling law).[13]

It is the same quoted language from *Roach* that compels this Court to make an "*Erie* guess"

---

[13] In fact, in the case of *Kemp v. Am. Univ. Ins. Co.*, 391 F.2d 533 (5th Cir. 1968) the Fifth Circuit relied in part on the Louisiana *Roach* analysis to construe a wind policy under Mississippi law and to find the efficient proximate cause doctrine controlling. Interestingly, the *Leonard* court relied in part on the *Kemp* case to show that efficient proximate cause is the default rule in Mississippi. 499 F.3d 419, 432-33.

and find that insurance companies and their insured may opt-out of the efficient proximate cause doctrine by contract. *Roach* makes clear that the default rule applies only to a "policy not otherwise limited or defined." *Roach*, 112 So.2d at 683. This analysis parallels the Fifth Circuit's analysis in *Leonard*. *See Leonard*, 499 F.3d at 433 (noting that efficient proximate causation does not necessarily control Mississippi contracts for hurricane damage).[14] Further, this conclusion is supported by the Louisiana Supreme Court's pronouncement on the issue in *Lorio* because the Court in *Lorio* quoted specifically the language from *Roach* language with its limitation as the law controlling the case. 232 So.2d at 493-94.

Finally, this conclusion is not undermined by Louisiana statute or public policy. As the *Leonard* court found for Mississippi, no Louisiana statute "mandate[s] that insurance policies reflect the efficient proximate causation doctrine." 499 F.3d at 435. Additionally, as in the *Leonard*'s analysis of Mississippi law, nothing leads this Court to believe that Louisiana has adopted the efficient proximate cause doctrine as a matter of public policy. *Leonard*, 499 F.3d at 435. Instead, it appears to this Court that Louisiana is in accord with "[m]ost jurisdictions [which] concur that [ACC] clauses comport with state public policy." *Leonard*, 499 F.3d at 435.

Thus, the ACC clause in this case is unambiguous, and because nothing in Louisiana case law, statute, or public policy precludes insurance companies and their insured from opting-out of the efficient proximate cause doctrine through such clauses, CPSB's ACC clause must stand.

## CONCLUSION

---

[14] *Leonard* cited *Kemp*, 391 F.2d at 534-35 for this proposition: ("[I]n order to recover on a windstorm insurance policy, *not otherwise limited or defined, it is sufficient to show that wind was the proximate or efficient cause of loss or damage* . . . ." (emphasis added)). 499 F.3d at 433.

For the foregoing reasons,

IT IS ORDERED that RSUI's Motion for Partial Summary Judgment [doc. 24] is hereby GRANTED;

IT IS FURTHER ORDERED that CPSB's Cross-Motion for Partial Summary Judgment [doc. 34] is hereby DENIED.

Lake Charles, Louisiana, this 23 of August, 2008.

PATRICIA H. MINALDI
UNITED STATES DISTRICT JUDGE