

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **CAMERON PARISH SCHOOL BOARD** | : | **DOCKET NO. 2:06 CV 1970** |
| **VS.** | : | **JUDGE MINALDI** |
| **RSUI INDEMNITY COMPANY** | : | **MAGISTRATE JUDGE KAY** |

### MEMORANDUM RULING

Before the Court is a *Daubert* Motion to exclude expert witnesses, [doc. 104], filed by defendant RSUI Indemnity Company (hereinafter "RSUI"). The plaintiff, Cameron Parish School Board (hereinafter "CPSB") filed an Opposition [doc. 158]. On November 7, RSUI filed leave to file a supplemental memorandum in support of its *Daubert* motion [doc. 167].

### FEDERAL RULE OF EVIDENCE 702

FED. R. EVID. 702 provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court tasked the federal district courts with a gatekeeper function to keep unreliable expert testimony out of evidence. 509 U.S. at 589. The party seeking to introduce the expert's testimony must prove by a preponderance of the evidence that the expert is qualified, the testimony is reliable, and that the

1

testimony is relevant. *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

The *Daubert* Court articulated a non-exclusive and non-dispositive checklist for federal district courts to use when assessing the reliability of expert testimony. *Id.* This gate-keeping function extends to all expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). Trial judges have "considerable leeway in...determining whether particular expert testimony is reliable." *Id.* at 155. "Both the determination of reliability and the factors taken into account are left to the discretion of the district court consistent with its gatekeeping function under FED. R. EVID. 702." *Munoz v. Orr*, 200 F.3d 291, 301-02 (5th Cir. 2000).

The first prong of *Daubert* "focuses on whether the expert testimony is based on a reliable methodology...." *Daubert*, 509 U.S. at 595. "[T]he party seeking to have the district court admit expert testimony must demonstrate that the expert's findings and conclusions are based on the scientific method, and, therefore, are reliable. This requires some objective, independent validation of the expert's methodology. The expert's assurances that he has utilized generally accepted scientific methodology is insufficient." *Moore*, 151 F.3d at 276. Pursuant to the second prong of *Daubert*, testimony must be "relevant not simply in the sense that all testimony must be relevant, but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact at issue." *Bocanegra v. Vicmar Services, Inc.*, 320 F.3d 581, 584 (5th Cir. 2003).

## ANALYSIS

RSUI seeks to exclude expert witnesses Dr. Anurag Jain of Weidlinger Associates, Kelly Spence of Tremaine Enterprises, and Charles Norman on the grounds that their opinions are founded on baseless speculation, include alleged damages excluded by the applicable policy

and/or the result of improper workmanship, and improperly call for replacement cost values with alleged damages that have not been repaired.[1]

A.) Dr. Anurag Jain

At the outset, this Court finds that Dr. Jain is qualified to testify as an expert. He has a bachelor's degree in civil engineering, a master's degree in structural engineering, a PhD in wind engineering, is a licensed professional engineer, and is certified in structural engineering by the Structural Engineering Certification Board.[2] Dr. Jain is a member of the committee that writes the wind load codes for the country.[3] He has assessed the damage caused by hurricanes to several structures in Florida.[4] Dr. Jain has served as an expert in evaluating damages from Hurricanes Rita and Katrina, and has never failed to qualify as an expert.[5]

RSUI argues that Dr. Jain's testimony is not reliable because he does not have firsthand knowledge of the damages caused by Rita, did not review maintenance records, did not investigate storm surge speeds, wave heights, possibility of run-up, or the details regarding standing water. RSUI also contends that Dr. Jain lacks support for his testimony on causation.

Dr. Jain's reports on each property have an executive summary, description of the

---

[1] RSUI has filed a motion in limine [doc. 164] on replacement cost values, so this issue is more appropriately addressed in that ruling.

[2] Pl.'s Ex. G (Jain Dep), pp. 22:9-22, 24:22-25:1.

[3] *Id.* pp. 23:25-24:4.

[4] *Id.* p. 39:5-18.

[5] *Id.* pp. 42:16-23, 74:2-13, 97:3-98:10.

3

buildings, discussion of Hurricane Rita's impact on that specific property,[6] damage at each specific property and conclusions as to cause of damage,[7] the effect of the hurricane force winds on the buildings' performance,[8] and finally, conclusions based on the preceding chapters.[9] Dr. Jain testified at length on the basis for his conclusions.[10] RSUI asserts that Dr. Jain's calculations are not in his reports; however, Dr. Jain testified that his calculations are in the file materials, which were given to RSUI in discovery, and were not questioned during the deposition.[11]

Dr. Jain states that everything he relied on in his report is identified.[12] Dr. Jain has analyzed causation before by separating out wind versus water damage.[13] He also states that where Hurricane Rita exacerbated, rather than caused, the damage, that distinction is noted in his report.[14] RSUI found fault with the fact that some of Dr. Jain's opinions were based on photographs and Dr. Jain admitted that it is better to personally observe the damage; however, Dr.

---

[6] Dr. Jain relied on several sources, such as NOAA and NWS, to calculate peak gust wind speeds at each property. Pl.'s Ex. A, pp. 9-19. Dr. Jain relied on FEMA maps, a NWS report, and the ground elevation maps to determine storm surge at each location. *Id.* pp. 16-19.

[7] Dr. Jain relied on photographs taken within a week of Hurricane Rita and his own observations from site visits. *Id.* pp. 20-139.

[8] *Id.* pp. 140-43. For this analysis, Dr. Jain referred to building codes and wind pressure.

[9] *Id.* pp. 144-50. In response to RSUI's questioning whether "very likely" indicated speculation, Dr. Jain responded that "very likely" is a scientific term based upon books that recommend a level of confidence. Pl.'s Ex. G p. 304:7-23.

[10] *See* Pl.'s Ex. G pp. 384-433.

[11] *Id.* p. 143:18-20.

[12] *Id.* p. 141.

[13] *Id.* p. 91.

[14] *Id.* p. 229:11-20.

4

Jain also explained that often experts are not called in until later when it may not be possible to observe damage.[15] RSUI also objected to the fact that Dr. Jain did not consult maintenance records, but Dr. Jain testified that he can tell the age of damage based on visual observations and appearance and that maintenance logs are "not necessarily" something he would examine.[16]

Dr. Jain indicated several times throughout the deposition that he performed an independent analysis of wind versus wave damage.[17] Dr. Jain stated that he considered wave heights and debris in his analysis.[18] He explained his methodology for assessing damage that was repaired before he was hired as an expert.[19] RSUI seeks to exclude Dr. Jain, in part, because he requested blueprints and never received them, but Dr. Jain testified that the blueprints were destroyed in the hurricane and were not necessary for his analysis.[20] Dr. Jain also stated that he did not need to know the materials used in each building or the specific age of each building, because that information is not necessary for his analysis, which relies on wind load coefficients.[21]

Having reviewed Dr. Jain's expert reports and his 462-page deposition testimony in its entirety, this Court finds that Dr. Jain is qualified to testify as an expert and that his opinions are reliable.

---

[15] *Id.* p. 228:16-229:4.

[16] *Id.* p. 254:3-19.

[17] *Id.* p. 300.

[18] *Id.* pp. 327-28.

[19] *Id.* pp. 360-61.

[20] *Id.* pp. 384-86.

[21] *Id.* pp. 384-87. Dr. Jain is on the committee that writes the wind load coefficients for the entire country. *Id.*

B.) Kelly Spence

RSUI also seeks to exclude Kelly Spence as CPSB's estimating expert. CPSB retained Mr. Spence to take Dr. Jain's engineering opinions as to what damages were attributable to wind and use the Xactimate insurance estimating system to compute a cost estimate of wind-related damage to the properties.[22]

Mr. Spence has been working as an insurance adjuster since 1986, has his Texas adjuster's license, has his associate's in claims from the Insurance Institute of America, has issued at least 1,000 estimates in connection with hurricane-related damages, and has a temporary license for adjusting in Louisiana, which he testifies is sufficient for his work.[23] Thus, Mr. Spence is qualified to testify as an expert in estimating damage.

As to Mr. Spence's methodology, he initially performed a site visit to each property, and conducted additional site visits as needed.[24] After Dr. Jain prepared his report, Mr. Spence used the causation opinions as a basis for his estimates.[25] Mr. Spence then used the Xactimate insurance estimating system to compute his valuations of damage, a system he has used since 1990.[26] RSUI contends that Mr. Spence did not perform an independent analysis of the elevation levels, review meteorological data, and looked at only a few photographs; however, Mr. Spence relied upon Dr. Jain's expert report, which did do those things. Mr. Spence's responsibility was

---

[22] Spence testified that this system is widely used and is the premier program in the insurance industry. Pl.'s Ex. U (Spence Dep.), p. 165.

[23] Id. pp. 21-62.

[24] Id. pp. 209-10.

[25] Id. pp. 90, 115, 147-48.

[26] Id. pp. 165-66. He testified he inputted each building's material and quantity, using the price lists created by Xactimate, which provided a dollar amount. Id. pp. 166-69.

damage to the properties.[22]

Mr. Spence has been working as an insurance adjuster since 1986, has his Texas adjuster's license, has his associate's in claims from the Insurance Institute of America, has issued at least 1,000 estimates in connection with hurricane-related damages, and has a temporary license for adjusting in Louisiana, which he testifies is sufficient for his work.[23] Thus, Mr. Spence is qualified to testify as an expert in estimating damage.

As to Mr. Spence's methodology, he initially performed a site visit to each property, and conducted additional site visits as needed.[24] After Dr. Jain prepared his report, Mr. Spence used the causation opinions as a basis for his estimates.[25] Mr. Spence then used the Xactimate insurance estimating system to compute his valuations of damage, a system he has used since 1990.[26] RSUI contends that Mr. Spence did not perform an independent analysis of the elevation levels, review meteorological data, and looked at only a few photographs; however, Mr. Spence relied upon Dr. Jain's expert report, which did do those things. Mr. Spence's responsibility was assigning a dollar amount to the loss, which he did using the Xactimate program.

Having considered the parties' briefs and Mr. Spence's deposition testimony in its entirety, this Court finds that Mr. Spence is qualified as an expert estimator. Some of Mr.

---

[22] Spence testified that this system is widely used and is the premier program in the insurance industry. Pl.'s Ex. U (Spence Dep.), p. 165.

[23] *Id.* pp. 21-62.

[24] *Id.* pp. 209-10.

[25] *Id.* pp. 90, 115, 147-48.

[26] *Id.* pp. 165-66. He testified he inputted each building's material and quantity, using the price lists created by Xactimate, which provided a dollar amount. *Id.* pp. 166-69.

relied upon Dr. Jain's expert report, which did do those things. Mr. Spence's responsibility was assigning a dollar amount to the loss, which he did using the Xactimate program.

Having considered the parties' briefs and Mr. Spence's deposition testimony in its entirety, this Court finds that Mr. Spence is qualified as an expert estimator. Some of Mr. Spence's testimony may be excluded, however, based on other pending motions.[27]

### C.) Charles Norman

RSUI argues that Charles Norman P.E. is not qualified to testify because he is not a licensed structural engineer. RSUI argues that he has insufficient experience rendering wind versus wave causation determinations, which it supports by Mr. Norman's deposition testimony that he has been consulted in over 500 cases involving the determination of causation of damages involving a wind versus water determination.[28] At the outset, this Court qualified Mr. Norman as an expert in engineering with a subspeciality in wind engineering in *Stevens v. Auto Club Family Insurance Company*, 06-cv-1885, which was tried in June 2008. Accordingly, this Court has already examined Mr. Norman's qualifications as to those areas and finds him qualified as an expert in the same fields.

RSUI also argues Mr. Norman's opinions are unreliable and include irrelevant data. Specifically, RSUI objects to Mr. Norman's use of the Degree of Damage (hereinafter "DOD") rating based on the Fujita/Enhanced Fujita Scales, which RSUI argues is used to assess wind damages caused by tornadoes. Mr. Norman testified based on the Fujita/Enhanced Fujita Scales

---

[27] For example, the outcome of RSUI's Motion to Exclude Evidence on the Issue of Actual Cost Value Versus Replacement Cost Value [doc. 164] could limit Mr. Spence's testimony.

[28] Def.'s Ex. 2 (Norman Dep.), p. 105.

in the *Stevens* trial, and thus this Court has already found this methodology to be reliable. Moreover, Mr. Norman testified that the Fujita scale is used to assess wind damage from both hurricanes and tornadoes, and is accepted by both NOAA and FEMA for assessing wind damage.[29] This Court finds that the Fujita scale is a reliable methodology for assessing wind damages caused by hurricanes.

CPSB demonstrates that Mr. Norman performed site visits of the properties, documented and studied forensic evidence from these properties, reviewed building construction details, reviewed photographs when needed, and used publicly available weather data in formulating his conclusions.[30] He then assigned a DOD rating for damages.[31]

RSUI also objects to Mr. Norman testifying because it notes CPSB's experts Dr. Jain and Mr. Norman differ significantly on the storm surge levels at each property. RSUI also objects to Mr. Norman's use of neighboring watermarks rather than use the watermarks on CPSB's properties without any documentation in his report. Mr. Norman states he did this because the waterlines photographed on behalf of CPSB are insufficient. CPSB, in opposition, points out that photographs of neighboring structures are included in Mr. Norman's file.[32]

RSUI also states that Mr. Norman alleges he relies on certificates of elevation in calculating the extent of flood damage, but this information is not within his file and his

---

[29] *Id.* p. 274.

[30] Pl.'s Mem. in Opp., at 33-34.

[31] *Id.* pp. 35-36.

[32] Pl.'s Ex. X, pp. 2-3; *see also* Pl.'s Ex. FF, p. 2.

references are silent to this alleged evidence.[33] Furthermore, Mr. Norman concludes that the properties were damaged from wind, but RSUI argues that he has no calculations in his file to support this conclusion. Mr. Norman stated in his deposition that he does have calculations.

Having considered the parties' briefs and evidence, his Court finds that Mr. Norman is qualified to testify as an expert in the areas of engineering and wind engineering.

D.) Policy

RSUI further seeks to exclude CPSB's experts because their testimony improperly includes damages that are excluded by the policy, such as: exterior bulk debris removal, fallen tree removal, repairing chain link fencing, repairing brick walls, routine maintenance, details cleaning, cleaning of all hard-surfaced contents, boxing up miscellaneous contents, clean up and repairs to certain structures, and murals.[34] This Court finds that RSUI has not met its burden of demonstrating why these items are excluded from coverage; accordingly,

IT IS ORDERED that RSUI's *Daubert* Motion to exclude expert witnesses, [doc. 104], is hereby DENIED.

Lake Charles, Louisiana, this __19__ day of __Nov_____, 2008.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

---

[33] In his deposition, Mr. Norman stated he would procure copies for RSUI. Def.'s Ex. B, at 15.

[34] Def.'s Ex. 3, pp. 2-4.

9