U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - LAKE CHARLES

NOV 19 2008

ROBERT H. SHEMWELL, CLERK
BY _____
        DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **CAMERON PARISH SCHOOL BOARD** | : | **DOCKET NO. 2:06CV1970** |
| VS. | : | JUDGE MINALDI |
| **RSUI INDEMNITY COMPANY** | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the Court is a Motion in Limine [doc. 105] to exclude the expert reports and opinions of Nelson Architectural Engineers ("NAE") and its representative, Kerry Lee ("Lee"), filed by plaintiff Cameron Parish School Board ("CPSB"). The defendant RSUI Indemnity Company ("RSUI") filed an Opposition [doc. 114]. CPSB filed a Reply [doc. 148].

## FEDERAL RULE OF EVIDENCE 702

FED. R. EVID. 702 provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court tasked the federal district courts with a gatekeeper function to keep unreliable expert testimony out of evidence. 509 U.S. at 589. The party seeking to introduce the expert's testimony must prove by a preponderance of the evidence that the expert is qualified, the testimony is reliable, and that the

testimony is relevant. *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

The *Daubert* Court articulated a non-exclusive and non-dispositive checklist for federal district courts to use when assessing the reliability of expert testimony. *Id.* This gate-keeping function extends to all expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). Trial judges have "considerable leeway in...determining whether particular expert testimony is reliable." *Id.* at 155. "Both the determination of reliability and the factors taken into account are left to the discretion of the district court consistent with its gatekeeping function under FED. R. EVID. 702." *Munoz v. Orr*, 200 F.3d 291, 301-02 (5th Cir. 2000).

The first prong of *Daubert* "focuses on whether the expert testimony is based on a reliable methodology...." *Daubert*, 509 U.S. at 595. "[T]he party seeking to have the district court admit expert testimony must demonstrate that the expert's findings and conclusions are based on the scientific method, and, therefore, are reliable. This requires some objective, independent validation of the expert's methodology. The expert's assurances that he has utilized generally accepted scientific methodology is insufficient." *Moore*, 151 F.3d at 276. Pursuant to the second prong of *Daubert*, testimony must be "relevant not simply in the sense that all testimony must be relevant, but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact at issue." *Bocanegra v. Vicmar Services, Inc.*, 320 F.3d 581, 584 (5th Cir. 2003).

## ANALYSIS

CPSB seeks to exclude the expert report and opinions of NAE and its representative Kerry Lee. CPSB asserts that NAE's reports, opinions and the testimony of Lee do not satisfy the requirements of FED. R. EVID. 702 or the requirements of *Daubert*. CPSB further asserts that NAE's reports, opinions and testimony will not assist the trier of fact, are irrelevant to the issues to be

2

decided, and are unreliable and not in accordance with acceptable scientific methodology.

## Kerry Lee's Qualifications

Fed. R. Evid. 702 states, in part, that an expert witness must be qualified by "knowledge, skill, experience, training, or education." Kerry Lee received B.S. in Architectural Engineering at U.T. Austin 1990. He is a Licensed Professional Engineer in twenty states, including Louisiana. He is nationally registered with the National Council of Examiners for Engineering and Surveying, the Structural Engineering Certification Board and is a member of the American Society of Civil Engineers and the Structural Engineers Association of Texas. He has worked in the engineering field for eighteen years. His work experience includes research, design, and management, including project engineering, design engineering, forensic engineering and construction administration for residential, commercial and industrial projects. Mr. Lee has given many lectures including "Case Studies in Forensic Engineering" and "Engineering Investigations of Common/Uncommon Perils." He published "The Impact of Market Demands on Residential Post-Tensioned Foundation Design: An Ethical Dilemma."

Mr. Lee has been qualified in court as an expert in forensic engineering, structural and architectural engineering. Mr. Lee also asserts that he is a specialist in foundation duress, movement, failure and repair; structural and building envelope failure analysis; water intrusion cause, origin, and extent of damage; structural design of structures and building cladding in high wind regions; and storm damage assessment resulting from hurricane wind and storm surge, tornados and other high wind events, hail flooding and many other storm perils.

CPSB argues that Lee is not qualified as he only has a bachelor's degree, whereas their

expert, Dr. Jain, has a PhD in wind engineering and a Masters of Science in Structural Engineering. CPSB's other expert, Charles Norman, has a Master's Degree in Engineering and is a doctoral student at Lamar. CPSB further asserts that Mr. Lee has not published any academic articles on wind engineering.

After reviewing Mr. Lee's qualifications and publications, the Court finds that even though Mr. Lee only has a bachelor's degree, he also has 18 years of experience in the field. Although he has not specialized in wind engineering *per se*, he has been qualified in forensic engineering and structural and architectural engineering, which he relied upon in making his assessments of storm damage. Mr. Lee's experience and education are sufficient to allow him to testify as an expert.

## Methodology

The question of whether an expert's testimony is reliable is ultimately a fact-specific inquiry. *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir.2004). The proponent of the expert testimony must prove reliability by a preponderance of the evidence. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir.1998) (en banc). It is then the district court's responsibility to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152; *Dart v. Kitchens Bros. Mfg. Co.*, 253 Fed. App'x. 395, 397-398, 2007 WL 3283750, 2 (5th Cir. 2007).

"This circuit has upheld the admission of expert testimony where it was based on the expert's specialized knowledge, training, experience, and first-hand observation while supported by solid evidence in the scientific community." *Pipitone*, 288 F.3d at 247. For example, the Fifth Circuit has upheld the admission of testimony from an expert on marshland who assessed liability for marsh deterioration based solely upon personal observations and expertise. *St. Martin v. Mobil Exploration*

evidence in the scientific community." *Pipitone*, 288 F.3d at 247. For example, the Fifth Circuit has upheld the admission of testimony from an expert on marshland who assessed liability for marsh deterioration based solely upon personal observations and expertise. *St. Martin v. Mobil Exploration & Producing U.S. Inc.*, 224 F.3d 402, 405-06 (5th Cir. 2000). Because "[e]ach marsh will have different forces acting upon it, depending upon its specific location and its surroundings ... a court could not rationally expect that a marshland expert would have published a peer-reviewed paper on each possible permutation of factors or each damaged area of marsh." *Id.* at 406.

However, "[d]istrict courts enjoy wide latitude in determining the admissibility of expert testimony, and the discretion of the trial judge and his or her decision will not be disturbed on appeal unless manifestly erroneous." *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988 (5th Cir. 1997) (internal quotations omitted). Although a trial judge's discretion should be supported by "adequately supported findings," *St. Martin*, 224 F.3d at 406, the trial judge must not apply the reliability factors too stringently and "transform a *Daubert* hearing into a trial on the merits." *Pipitone*, 288 F.3d at 250; *Dart v. Kitchens Bros. Mfg. Co.*, 253 Fed. App'x. 395, 398, (5th Cir. 2007).

CPSB argues that NAE's reports and opinions should be excluded because the reports have no scientific support. CPSB asserts that Mr. Lee never articulated the methodology behind NAE's opinions. This argument by CPSB mischaracterizes Mr. Lee's testimony. Mr. Lee testified that the opinions were reached using the scientific method, which is widely accepted in the engineering community. He testified:

> "I mean, the scientific method is really the main methodology we are doing. We are taking field observations, documenting everything that we see and reviewing available documents, information, storm data, and then forming a hypothesis and testing the hypothesis. Basically, that is the process you are doing the scientific

5

method...."

"There is a definitive scientific process, but it is very much on cases like this, based upon your experience and the data you gathered, as far as how much storm surge you have, how much wind you have. That process can, can and is replicated."(Deposition of Kerry Lee, pp. 227-31).

NAE and Mr. Lee did employ a definitive scientific process that has been accepted in the engineering field. NAE's reports and opinions are based on the Mr. Lee's specialized knowledge, training, experience, and first-hand observation while supported by solid evidence in the scientific community. These reports and opinions will not be excluded. The jury will determine reliability at trial.

## Evaluation of Damages & Belfor Invoices

CPSB filed a Motion in Limine seeking to exclude testimony that RSUI paid for non-covered losses included in the Belfor repair invoices, and/or that RSUI is entitled to a credit for overpayment [doc. 102] and a Motion in Limine to preclude RSUI from offering any expert testimony regarding the amount of loss sustained by CPSB that was caused concurrently by a covered peril [doc. 106]. Thus, these issues are more appropriately resolved in the Rulings on those specific motions, since the parties fully briefed the issue in that context. Accordingly, the court decline to address these issues herein.

Lake Charles, Louisiana, this __19__ day of November, 2008.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE