U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - LAKE CHARLES

NOV 2 0 2008

ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| CAMERON PARISH SCHOOL BOARD | : | DOCKET NO. 2:06 CV 1970 |
| VS. | : | JUDGE MINALDI |
| RSUI INDEMNITY COMPANY | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM ORDER

Before the Court is CPSB's *Daubert* motion to exclude the testimony of Dr. David Mitchell [doc. 103]. RSUI filed an Opposition [doc. 113]. CPSB filed a Reply [doc. 130].

### FEDERAL RULE OF EVIDENCE 702

FED. R. EVID. 702 provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court tasked the federal district courts with a gatekeeper function to keep unreliable expert testimony out of evidence. 509 U.S. at 589. The *Daubert* Court articulated a non-exclusive and non-dispositive checklist for federal district courts to use when assessing the reliability of expert testimony. *Id.* This gate-keeping function extends to all expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). Trial judges have "considerable leeway in...determining

1

whether particular expert testimony is reliable." *Id.* at 155. "Both the determination of reliability and the factors taken into account are left to the discretion of the district court consistent with its gatekeeping function under FED. R. EVID. 702." *Munoz v. Orr*, 200 F.3d 291, 301-02 (5th Cir. 2000).

## ANALYSIS

Dr. Mitchell was retained by RSUI as a meteorology expert to "determine the wind speeds and storm surge levels that could have been at CPSB's properties." Dr. Mitchell has a doctorate in meteorology and over thirty years of technical modeling experience. He recently testified as an expert in air modeling and forensic meteorology in two Hurricane Katrina trials. Dr. Mitchell indicated in his deposition that he is sometimes not allowed to testify about structural engineering issues because he is not an engineer.[1]

CPSB requests that this Court exclude and/or limit Dr. Mitchell's testimony in its entirety because it is neither relevant nor reliable. CPSB argues that Dr. Mitchell's testimony is irrelevant and unreliable because both RSUI and CPSB have engineering experts who calculated their own wind speed and storm surge information based on "meteorological data that is commonly available to everyone."[2] RSUI's wind engineering experts Kerry Lee and Larry Jones did not use Dr. Mitchell's data.[3] Further, CPSB argues that Dr. Mitchell's expert report mainly consists of publicly-available maps and images downloaded from the Internet from NOAA or the National Climatic Data Center, and does not require an expert. CPSB also argues that Dr.

---

[1] Pl.'s Ex. D (Mitchell Dep. p. 42:10-13).

[2] Pl.'s Ex. A (Jones Dep., pp. 195:24-196:10).

[3] *Id.*; *see also* Pl.'s Ex. C (Lee Dep., pp. 264:24-265:2).

Mitchell's testimony is unreliable because he did not visit CPSB's properties, and did not calculate or determine wind speeds at the specific properties but instead grouped them by either coastal and inland properties, and established general areas of ranges of wind speed.[4] Despite acknowledging that the depth of water at each location depends on the elevation of the specific property, Dr. Mitchell also admitted he did not know the elevations at each property or how much water was at each property.[5] CPSB contends that the elevation of each individual building must be considered when determining a storm surge level. Thus, CPSB maintains that Dr. Mitchell's testimony on general wind speeds and storm surge levels is neither reliable nor relevant, and should be excluded in its entirety because it would not assist the jury in determining what caused damage to CPSB's properties. CPSB alternatively argues that this Court preclude Dr. Mitchell from testifying about structural engineering issues because he has no training, education, or experience as an engineer and is therefore not qualified to provide expert opinions in this field.[6]

RSUI argues that Dr. Mitchell should be permitted to testify. RSUI maintains that an expert is needed to interpret the publicly-available documents, and that a person without scientific training would be unable to use these products to form opinions about wind and storm surge. RSUI further argues that his methodology is acceptable because he reviews NWS data to

---

[4] Dr. Mitchell testified that the exact distance from the Gulf is significant; however, his report does not contain the exact distance from the Gulf to each individual property. Pl.'s Ex. D, p. 73:16-23.

[5] Dr. Mitchell stated "I didn't investigate any high watermarks at any of the property locations." *Id.* p. 70:8-9. Instead, Dr. Mitchell relied upon FEMA high watermark numbers ranging from 12-15 feet.

[6] *See* Pl.'s Ex. D (Mitchell Dep. pp. 35:9-36:13); Pl.'s Ex. E pp. 8, 45.

render an expert opinion on the amount and order of wind speeds and storm surges.[7] RSUI concludes that Dr. Mitchell's testimony should be admitted because "the jury will want to hear from a meteorologist, just like if they were tuning into a local weather report. An engineer simply would not satisfy their desires."

This Court finds that Dr. Mitchell is qualified to testify as an expert in air modeling and forensic meteorology and that his methodology is reliable. Dr. Mitchell is, however, precluded from giving opinions on structural engineering issues because he is not an engineer and therefore is not qualified under *Daubert*. The relevancy of his testimony will depend on the evidence CPSB presents at trial, and CPSB may raise a relevancy objection at trial; accordingly,

IT IS ORDERED that CPSB's motion [doc. 103] is hereby GRANTED in part and DENIED in part. CPSB's motion is DENIED insofar as Dr. Mitchell is qualified as an expert in air modeling and forensic meteorology, but the motion is GRANTED insofar as his testimony may not include opinions on structural engineering issues.

Lake Charles, Louisiana, this __19__ day of __Nov__, 2008.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

---

[7] RSUI refutes CPSB's argument that Dr. Mitchell did not capture the wind speeds at each individual property but instead separated them into coastal and inland groups by stating that the properties did not have data instrumentation at the time of Hurricane Rita, and that CPSB itself refers to the properties as the inland properties.

4